Michael A. Geibelson, SBN: 179970
MAGeibelson@rkmc.com
Wesley W. Lew, SBN: 222351
WWLew@rkmc.com
**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
2049 Century Park East
Suite 3400
Los Angeles, CA 90067-3208
Telephone: 310-552-0130
Facsimile: 310-229-5800

Christopher K. Larus, *Pro Hac Vice*
CKLarus@rkmc.com
Bryan J. Mechell, *Pro Hac Vice*
BJMechell@rkmc.com
**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN 55402-2015
Telephone: 612-349-8500
Facsimile: 612-339-4181

**Attorneys for Defendant**
*BEST BUY CO., INC., BEST BUY STORES,
L.P., AND BESTBUY.COM, LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DIGITECH IMAGE TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BEST BUY CO., INC., BEST BUY STORES, L.P., and BESTBUY.COM, LLC<br><br>Defendant. | Case No.<br>SA CV 12-01669-ODW(MRWx)<br><br>**MEMORANDUM IN SUPPORT OF BEST BUY'S MOTION TO STAY**<br><br>Honorable Otis D. Wright, II<br><br>HEARING DATE: January 28, 2013<br>HEARING TIME: 1:30 p.m.<br>Location: Courtroom 11, Spring Street |

83537745.2

# TABLE OF CONTENTS

Page

I. SUMMARY OF ARGUMENT .................................................................. 1

II. STATEMENT OF FACTS .......................................................................... 2

III. BEST BUY IS PERIPHERAL TO THE DCM LITIGATIONS ................... 3

    A. Staying The Case Against Best Buy Will Simplify The Issues And Promote Judicial Economy .......................................................... 4

    B. Courts Routinely Stay Claims Against Retailer Defendants ................ 5

    C. Staying The Case Against Best Buy Will Not Prejudice Digitech ....... 9

    D. Best Buy Will Suffer Substantial Prejudice Without a Stay ............... 10

    E. The Court Can Order A Stay Under Its Inherent Power ..................... 11

IV. IF THIS CASE IS NOT STAYED IN ITS ENTIRETY, DISCOVERY WITH RESPECT TO BEST BUY SHOULD BE STAYED UNTIL AFTER COMPLETION OF INVALIDITY AND NON-INFRINGEMENT DISCOVERY ................................................................. 11

V. CONCLUSION ......................................................................................... 12

83537745.2

-i-

BEST BUY'S MOTION TO STAY

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ambrose v. Steelcase, Inc.*,
 2002 WL 1447871 (N.D. Ill., July 3, 2002) .................................................................. 10

*Aro Mfg. Co. v. Convertible Top Replacement, Co.*,
 377 U.S. 476 (1964) ..................................................................................................... 10

*Aspex Eyeware, Inc. v. Revolution Eyeware, Inc.*,
 No. CV 07-05042, slip op. (C.D. Cal. March 7, 2008) ................................................ 11

*Avia Group Int'l, Inc. v. Nike, Inc.*,
 1991 U.S. Dist. LEXIS 20492 (D. Or. Sept. 17, 1991) ................................................ 12

*Brown Mfg. Corp. v. Alpha Lawn & Garden Equip. Inc.*,
 219 F. Supp. 2d 705 (E.D. Va. 2002) ............................................................................. 9

*Calmedica LLC v. Novoste Corp.*,
 2004 WL 413296 (N.D. Ill. Jan. 30, 2004) ..................................................................... 4

*CMAX, Inc. v. Hall*,
 300 F.2d 265 (9th Cir. 1962) ........................................................................................ 11

*Commissariat A L'Energie Atomique v. Dell Computer Corp. et al.*,
 2004 WL 1554382 (D. Del., May 13, 2004) ........................................................ 3, 6, 7

*Corry v. CFM Majestic Inc.*,
 16 F. Supp. 2d 660 (E.D. Va. 1998) ............................................................................... 8

*Encyclopaedia Britannica, Inc. v. Magellan Navigation, Inc.*,
 512 F. Supp. 2d 1169. (W.D. Wis. 2007) .................................................................... 10

*Eon-Net LP v. Flagstar Bancorp*,
 635 F.3d 1314 (Fed. Cir. 2011) .................................................................................... 11

*Glenayre Elecs., Inc. v. Jackson*,
 443 F.3d 851 (Fed. Cir. 2006) ........................................................................................ 5

*In re Papst Licensing*,
 2011 WL 350427 (D. D.C. Feb. 1, 2011) ....................................................................... 3

*Intel Corp. v. ULSI Sys. Tech., Inc.*,
 95 F.2d 1566 (Fed. Cir. 1993) ........................................................................................ 4

**TABLE OF AUTHORITIES**
**(CONTINUED)**

Page(s)

*Katz v. Lear Siegler*,
　909 F.2d 1495 (Fed. Cir. 1990) ................................................................................ 3

*Kessler v. Eldred*,
　206 U.S. 285 (1907) ................................................................................................ 4

*Landis v. North Am. Co.*,
　299 U.S. 248 (1936) .............................................................................................. 11

*Lemelson v. Apple Computer Inc. et al.*,
　1993 U.S. Dist. LEXIS 20128 (D. Nev. June 4, 1993) ........................................ 12

*LG Elec., Inc. v. Asustek Computers*,
　126 F. Supp. 2d 414 (E.D. Va. 2000) ..................................................................... 5

*MGA, Inc. v. Gen. Motors Corp.*,
　827 F.2d 729 (Fed. Cir. 1987) ................................................................................ 4

*Micro Enhanced Tech., Inc. v. Videx, Inc.*,
　No. 1:11-cv-05506, slip op. (N.D. Ill. August 16, 2012) ....................................... 7

*Oplus Tech. Ltd. v. Sears Holding Corp.*,
　2012 U.S. Dist. LEXIS 83597 (N.D. Ill. June 15, 2012) .............................. 4, 7, 8

*Refac Int'l Ltd. v. IBM*,
　790 F.2d 79 (Fed. Cir. 1986) ............................................................................. 5, 6

*Refac Int'l Ltd. v. IBM*,
　798 F.2d 459 (Fed.Cir. 1986) ............................................................................ 5, 6

*Ricoh Co., Ltd. v. Aeroflex Inc.*,
　279 F. Supp. 2d 554 (D. Del. 2003) ....................................................................... 5

*Rivers v. Walt Disney Co.*,
　980 F. Supp. 1358 (C.D. Cal. 1997) .................................................................... 11

*Shifferaw v. Emson USA*,
　2010 WL 1064380 (E.D. Tex. Mar. 18, 2010) ....................................................... 5

*Spread Spectrum Screening, LLC v. Eastman Kodak Co.*,
　2010 U.S. Dist. LEXIS 90549 (N.D. Ill. Sept. 1, 2010) ........................................ 8

## I. SUMMARY OF ARGUMENT

Defendant Best Buy Co., Inc. (improperly named as a party), Best Buy Stores, L.P., and BestBuy.com, LLC (collectively, "Best Buy") requests that the Court stay this action in its entirety because Best Buy is a retailer of certain of the accused products,[1] and as such the claims against it are secondary to the principal claims Digitech has filed against the Digital Camera Manufacturers ("DCMs.")[2]

Best Buy is a peripheral defendant because it merely resells some of the accused cameras. Best Buy is not familiar with the detailed technical workings of the accused cameras nor does it have possession, custody, or control of the technical documents and information needed to defend against patent infringement allegations. The DCMs, which design, develop and/or manufacture the accused digital cameras, are in the best position to defend their own products.

Digitech has failed to identify any compelling reason to keep mere retailers of accused products in this case. Staying the case against Best Buy will permit the DCMs, Digitech, and this Court to focus on the merits of the cases, without prejudice to Digitech. Without a stay, Best Buy will suffer substantial prejudice and will be forced unfairly to devote resources to defend against infringement claims which it is not reasonably positioned to defend.

---

[1] The retailers are B&H Foto & Electronics Corporation, Best Buy Co., Inc., Best Buy Stores, LP, Bestbuy.Com, LLC, Buy.com, CDW LLC, Micro Electronics, Inc., Newegg, Inc., Newegg.Com, Inc., Overstock.com, Inc., and Target Corporation. The retailer case numbers, all beginning with 8-12-cv, are: 1668, 1669, 1671, 1683, 1686-1688, and 1695.

[2] The DCMs (listing separate but related entities together for convenience) are Canon, Casio, Fujifilm, General Imaging, Hasselblad, Leica, Mamiya, Nikon, Olympus, Panasonic, Pentax/Ricoh, Sakar, Sigma and Sony. The DCM case numbers, all beginning with 8-12-cv, are: 1667, 1670, 1673, 1675-1681, 1685, 1689, 1694, 1696, and 1697.

If this Court is unwilling to stay the case against Best Buy in its entirety, Best Buy requests in the alternative that the Court at least stay discovery with respect to Best Buy until discovery related to invalidity and non-infringement is complete.

## II. STATEMENT OF FACTS

On July 16, 2012, Digitech asserted the '415 patent against numerous defendants in a single lawsuit (Digitech I).[3] Digitech's Complaint alleged infringement by two separate and distinct groups of defendants: (1) digital camera manufacturers, and (2) consumer electronics retailers, such as Best Buy. (Digitech I, Dkt. 1.) On October 1, 2012, this Court dismissed all but AgfaPhoto, the first named defendant in Digitech I, due to misjoinder. (Digitech I, Dkt. 190.) On October 1 and 2, 2012, Digitech filed new individual complaints against all of the defendants dismissed from Digitech I. The newly filed Digitech cases are pending before this Court. Digitech has not served infringement contentions and discovery has not begun.

The DCMs are responsible for the design, development and manufacture of the accused cameras. Digital cameras made by different DCMs have different operational attributes and technical specifications. Documents and information relevant to the operational attributes and technical specifications of the accused cameras are proprietary to the individual DCMs. The fact witnesses with knowledge about the design, development and manufacture of the accused cameras will be current and former DCM employees.

Retailers like Best Buy are customers of the DCMs—they purchase the accused cameras from the DCMs and resell them as is. (*See* Declaration of Marie Gable at ¶¶ 4 and 5.) Best Buy does not alter the internal operations, functional attributes, or technical specifications of the cameras. (*Id*. at ¶ 6.) Best Buy has no control over the design, development or manufacture of the accused cameras. (*Id*.

---

[3] *Digitech Image Technologies, LLC v. Agfaphoto Holding GMBH, et al.*, 8:12-cv-01153-ODW-MRW.

at ¶ 7.)  Best Buy does not have possession, custody, or control of the proprietary documents that describe the operational attributes and technical specifications of the accused cameras. (*Id.* at ¶ 8.)

The claims of the '415 patent require specific technical elements that the accused cameras may or may not have.  Whether the accused cameras have the required technical elements will be key to the litigation.  A retailer like Best Buy simply does not have knowledge or information concerning the functional attributes and technical specifications of the accused cameras to contribute to the litigation.

### III.    BEST BUY IS PERIPHERAL TO THE DCM LITIGATIONS

Litigation against, or brought by, the manufacturer of infringing goods takes precedence over a suit against customers of the manufacturer.[4]  Courts prefer that "infringement determinations [ ] be made in suits involving the true defendant, the party that controls the product's design, rather than suits involving secondary parties such as customers of the manufacturer."[5]

Best Buy is a customer of certain of the DCMs and the infringement allegations against Best Buy are premised on it reselling certain of the DCMs' products.  This case will focus on the technical operations of the DCMs' cameras and whether those products practice the claims of the '415 patent.  Because Best Buy does not have possession, custody, or control of documents and information

---

[4]  *Katz v. Lear Siegler*, 909 F.2d 1495, 1464 (Fed. Cir. 1990); *Commissariat A L'Energie Atomique v. Dell Computer Corp. et al.*, 2004 WL 1554382, at *2-3 (D. Del., May 13, 2004) (staying the cases against OEM/distributors and retailers pending resolution of the cases against the manufacturers because "it is common practice to stay all pending [patent] litigation except the [ ] suit between the patent owner and a manufacturer…")

[5]  *See e.g., In re Papst Licensing*, 2011 WL 350427, at *10 (D. D.C. Feb. 1, 2011) (staying litigation against a retailer until after the completion of the manufacturer lawsuits reasoning that infringement determinations should be made in lawsuits involving the true defendant, the party that controls the product's design, rather than lawsuits involving secondary parties such as customers of the manufacturer.)

relevant to the operational attributes and technical specifications of the accused cameras, Best Buy lacks relevant and material information to defend this individual lawsuit and is similarly situated to the peripheral customer defendants in cases where plaintiffs sue manufacturers and their customers. *See e.g.*, *Oplus Tech. Ltd. v. Sears Holding Corp.*, 2012 U.S. Dist. LEXIS 83597 at *7 (N.D. Ill. June 15, 2012) ("Defendants are 'peripheral' when they lack relevant and material information…"); *Calmedica LLC v. Novoste Corp.*, 2004 WL 413296 at *2 (N.D. Ill. Jan. 30, 2004) (same).

As with the defendants in *Oplus* and *Calmedica*, Best Buy is a peripheral defendant because it lacks relevant and material information to defend the lawsuit. Accordingly, the claims against Best Buy should be stayed for the reasons set forth in those cases.

### A. Staying The Case Against Best Buy Will Simplify The Issues And Promote Judicial Economy.

Digitech's allegations against Best Buy only relate to cameras supplied by the DCMs. Accordingly, resolution of the claims against the DCMs will dispose of and eliminate any need to decide Digitech's claims against Best Buy. *See e.g.*, *Intel Corp. v. ULSI Sys. Tech., Inc.*, 95 F.2d 1566, 1568 (Fed. Cir. 1993) ("[E]ither [the accused infringer] will prevail and the use of the [accused product] will be determined to be non-infringing, or [the patentee] will prevail, and [the accused infringer] will be forced to pay damages or license the patent. In the latter situation, [the accused infringer's] customers would then be immunized from liability.")

That is, if the DCMs succeed on either invalidity or non-infringement defenses, Digitech would be precluded from pursuing the same allegations against Best Buy. *MGA, Inc. v. Gen. Motors Corp.*, 827 F.2d 729, 734 (Fed. Cir. 1987) ("The Kessler doctrine bars a patent infringement action against a customer of a seller who has previously prevailed against the patentee because of invalidity or non-infringement of the patent;" *see also Kessler v. Eldred*, 206 U.S. 285 (1907).)

Similarly, if Digitech prevails in proving infringement against and recovering damages from any of the DCMs, it will preclude further relief from Best Buy with regard to that DCM's products. *See e.g., Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 864 (Fed. Cir. 2006) ("[A] party is precluded from suing to collect damages for direct infringement by a buyer and user of a product when actual damages covering that very use have already been collected from the maker and seller of that product.")[6]

### B. Courts Routinely Stay Claims Against Retailer Defendants.

A number of courts have granted the relief requested by Best Buy herein and stayed claims against peripheral customer and retailer defendants (entities in positions similar to the position Best Buy is in here) pending resolution of a case against manufacturers (similarly situated to the DCMs here).

In *Refac*,[7] a district court stayed the case against 31 customer defendants.[8] On appeal, the Federal Circuit refused to disturb the decision because "[t]he order staying the prosecution of claims against [customer] defendants is a matter of case management within the discretion of the district court…"[9] The customer defendants in *Refac*, like Best Buy in this case, are not necessary to advance the

---

[6] *Shifferaw v. Emson USA*, 2010 WL 1064380, at *3 (E.D. Tex. Mar. 18, 2010) (if the manufacturer "is found liable and [the patentee] collects damages from [the manufacturer], then the plaintiff cannot then in turn collect damages from the Retailer Defendants, because [plaintiff] cannot receive a double recovery for the same sales."); *LG Elec., Inc. v. Asustek Computers*, 126 F. Supp. 2d 414, 422 (E.D. Va. 2000) ("If the court does find [the manufacturer] liable and allows [the patent owner] to collect royalties… [the patent owner] cannot then in turn collect royalties from the entity to whom the infringer sells the product"); *Ricoh Co., Ltd. v. Aeroflex Inc.*, 279 F. Supp. 2d 554, 558 (D. Del. 2003) (if the defendant licensed the patent in suit, its customers would be immunized from liability.).

[7] *Refac Int'l Ltd. v. IBM*, 790 F.2d 79, 80 (Fed. Cir. 1986).

[8] *Id.* at 80.

[9] *Refac Int'l Ltd. v. IBM*, 798 F.2d 459, 460 (Fed.Cir. 1986).

matter. As the Federal Circuit articulated "[p]roof of direct infringement does not require the participation [] of, or prosecution of claims against, the [customer] defendants who, though their participation is stayed, remain parties to the case."[10]

Digitech can, and must, obtain all relevant documents and information relating to the design, development, and manufacture of the accused cameras from the DCMs. Best Buy, like the customer defendants in *Refac*, is not necessary to advance Digitech's cases. As in *Refac*, this Court should stay the case against Best Buy to prevent unnecessary discovery and preserve judicial economy.

In *Commissariat A L'Energie Atomique*,[11] plaintiff sued over 60 manufacturers, distributors and retailers in several cases. The Court stayed the OEM/distributors and retailers, holding that a stay was appropriate because: 1) plaintiff will not suffer real prejudice or tactical disadvantage with a stay; and 2) the stay may streamline the case.

The Court noted it is common practice to stay all litigation except the suit between the patent owner and the manufacturers. Because the manufacturers are intimately involved in the design, operation, and use of the accused products, they are in the best position to contest the validity and infringement of the asserted patent.[12] The court reasoned that resolving invalidity and infringement issues prior to proceeding against the OEM/distributors and retailers "would surely simplify th[e] case."[13] For example, if the asserted patents were found invalid or not infringed, "there would be no need to proceed against the OEM/distributors or retailers, thus conserving judicial resources and expense to the parties."[14]

---

[10] *Id.*

[11] *Commissariat A L'Energie Atomique*, 2004 WL 1554382 (D. Del. May 13, 2004).

[12] *Id.* at *3.

[13] *Id.*

[14] *Id.*

Like the manufacturers in *Commissariat A L'Energie Atomique*, the DCMs are intimately involved in the design, operation, and use of the accuse product. And they are in the best position to contest the validity and infringement of the asserted patent. As in *Commissariat A L'Energie Atomique*, resolving invalidity and infringement issues prior to proceeding against retailers like Best Buy would simplify the litigations.

In *Micro Enhanced Tech.*, the plaintiff accused Videx and its customers of patent infringement. Videx's customers were accused of "install[ing] and us[ing] the [accused Videx] systems."[15] The court found Videx's customers to be peripheral defendants.[16] The court stayed the claims against Videx's customers because "[p]laintiff's suit is brought primarily against Videx, which has a greater interest in defending against charges of patent infringement, and severance and stay [of Videx's customers] will promote judicial economy by reducing discovery disputes, costs, and motions."[17]

In *Oplus Tech.*, Oplus accused television manufacturer Vizio and retailer Sears of patent infringement. Oplus accused Sears of "importing, selling or offering to sell infringing Vizio products."[18] The court found that Sears was a peripheral defendant that had no involvement in the design, development, manufacture, or any other technical aspect of the accused products,[19] and was unlikely to have information bearing on Oplus's infringement claims or Vizio's

---

[15] *Micro Enhanced Tech., Inc. v. Videx, Inc.*, No. 1:11-cv-05506, slip op. at 2 (N.D. Ill. August 16, 2012).

[16] *Id*.

[17] *Id*.

[18] *Oplus Tech.*, 2012 U.S. Dist. LEXIS 83597 at *3-4 (N.D. Ill. June 15, 2012).

[19] *Id*. at *4.

defenses.[20] The court stayed the case against Sears. In doing so, the court held that:

> "granting a motion to stay… is appropriate because 'litigation against the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer.'"[21] The court also found "[a] stay in this instance benefits judicial economy and serves 'the just, speedy and inexpensive disposition of this litigation.'…Vizio is the real party in interest who must defend this infringement suit. All of the substantive issues regarding patent infringement as they relate to the claims against Sears will be resolved in the action against Vizio – indeed, the resolution of the Vizio action could potentially eliminate the claims against Sears – and this would significantly simplify the issues in the Sears case and substantially reduce the burden of litigation on the parties, as well as the Court."[22]

In *Spread Spectrum*,[23] the plaintiff accused Kodak and its customers of patent infringement. Kodak moved to stay the customers. The court found that the customers were peripheral defendants who will "add nothing to plaintiff's infringement action against Kodak."[24] The court stayed the customers because they "have nothing substantive to offer during plaintiff's action against Kodak and likely do not even understand how the product software actually works and will not be helpful to determine whether Kodak's [product] infringes the [patent]… they are merely peripheral to the litigation between plaintiff and Kodak."[25]

---

[20] *Id.* at *8.

[21] *Id.* at *10-11.

[22] *Id.* at *11.

[23] *Spread Spectrum Screening, LLC v. Eastman Kodak Co.*, 2010 U.S. Dist. LEXIS 90549 (N.D. Ill. Sept. 1, 2010).

[24] *Id.* at *8.

[25] *Id.* at *9.

In *CFM Majestic*,[26] the plaintiff accused a fireplace manufacturer and its largest distributor of patent infringement. The Court stayed the case against the distributor, despite being the largest, because it "(i) was only secondarily involved, (ii) did not manufacture the alleged infringing device, and (iii) would be liable only if the main defendant was found to be infringing the patent."[27] Similarly, Best Buy is only secondarily involved in this case, does not manufacture the accused cameras, and would be liable only if the DCMs were found to be infringing the '415 patent.

In *Brown Manufacturing*,[28] the plaintiff accused the manufacturer, the marketer, a distributor, and two retail sellers of a trenching machine of patent infringement. The court stayed the case against the distributor and the retail sellers because "the claims associated with those [defendants] are peripheral to the claims that lie at the heart of this case -- that the design and manufacture of the [trenching machine] infringed on [p]laintiff's patents."[29]

### C. Staying The Case Against Best Buy Will Not Prejudice Digitech.

Digitech will not be prejudiced by a stay of this case. Digitech has not invested any effort into the case against Best Buy that will be wasted with a stay. Discovery has not yet begun. Digitech has not served any infringement contentions.

Staying the case against Best Buy will not impact Digitech's ability to obtain relevant discovery. Digitech's infringement claims, and many of the defendants' non-infringement defenses, will depend on the design, development, and manufacture of the accused cameras. As noted, the documents and information

---

[26] *Corry v. CFM Majestic Inc.*, 16 F. Supp. 2d 660 (E.D. Va. 1998).

[27] *Id*. at 665-666.

[28] *Brown Mfg. Corp. v. Alpha Lawn & Garden Equip. Inc.*, 219 F. Supp. 2d 705, 706-07 (E.D. Va. 2002).

[29] *Id*. at 709.

relevant to the design, development and manufacture of the accused cameras are proprietary to individual DCMs. Witnesses with knowledge and information about the design, development and manufacture of the accused cameras will be current and former employees of the DCMs. Digitech will have full access to relevant discovery on the accused products from the DCMs.

A stay would also not impact Digitech's ability to recover damages, if any. As noted, if Digitech prevails in its claims against DCMs, it will be able to fully recover from the DCMs. It is well established that recovery on a judgment constitutes full compensation to the patent owner for related acts of infringement and bars further relief as against other entities. *Aro Mfg. Co. v. Convertible Top Replacement, Co.*, 377 U.S. 476, 499 (1964). Simply put, a patentee is entitled to full compensation for related acts of infringement, but the patentee, like any alleged tort victim, is not entitled to multiple recoveries for the same injury. As such, Digitech will not be able to recover any additional damages from Best Buy. And to the extent Digitech is able to show at the appropriate time that any damages related discovery is needed from retailers, Digitech can seek to procure such evidence via an appropriate non-party subpoena.

### D. Best Buy Will Suffer Substantial Prejudice Without a Stay

Best Buy will be greatly prejudiced if no stay is entered. Best Buy's lack of involvement in the development and manufacturing of the accused devices restricts its ability to defend against the infringement claims at the core of this case. *See e.g.*, *Encyclopaedia Britannica, Inc. v. Magellan Navigation, Inc.*, 512 F. Supp. 2d 1169, 1174. (W.D. Wis. 2007); *Ambrose v. Steelcase, Inc.*, 2002 WL 1447871, at *6-7 (N.D. Ill., July 3, 2002) ("[The customer defendant] is not in a position to defend the infringement claims…"). Best Buy will also suffer significant disruptions defending against infringement allegations on the DCMs' products. Best Buy will incur substantial costs associated with discovery, motion practice, claim construction proceedings, and prior art searching, even though resolution of

the claims against the DCMs will resolve the major case issues. Imposing unnecessary defense costs artificially drives up settlement demands and is fundamentally unfair. *See e.g. Eon-Net LP v. Flagstar Bancorp*, 635 F.3d 1314, 1327 (Fed. Cir. 2011) (criticizing patentee's acts that "exploit[] the high cost to defend complex litigation to extract a nuisance value settlement.")

### E. The Court Can Order A Stay Under Its Inherent Power

A district court has inherent power to control the disposition of the cases on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants. *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936); *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (same); *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997) ("District courts have inherent power to stay their proceedings, which is incidental to the power to promote the efficient disposition of cases on their docket."). In exercising such discretion, the court "must weight competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55.[30] All of these factors weigh in favor of staying Best Buy. A stay benefits this Court, the plaintiff is not prejudiced by a stay, and Best Buy will be prejudiced if a stay is not granted.

## IV. IF THIS CASE IS NOT STAYED IN ITS ENTIRETY, DISCOVERY WITH RESPECT TO BEST BUY SHOULD BE STAYED UNTIL AFTER COMPLETION OF INVALIDITY AND NON-INFRINGEMENT DISCOVERY

If this Court does not stay the case against Best Buy in its entirety, the Court should at a minimum stay discovery against Best Buy until discovery related to invalidity and non-infringement in Digitech's cases against the DCMs is complete.

---

[30] *See Aspex Eyeware, Inc. v. Revolution Eyeware, Inc.*, No. CV 07-05042, slip op. at 7 (C.D. Cal. March 7, 2008) (The Court considers a variety of factors in assessing whether a stay is appropriate: (1) the benefits to the court of a stay; (2) the prejudice to plaintiff if a stay is granted; and (3) the prejudice to defendant if a stay is not granted); *CMAX*, 300 F.2d at 268.

It is not uncommon for courts to bifurcate issues of liability and damages before substantial discovery has occurred and there is time to stay discovery of damages.[31] Here, no discovery has occurred and a schedule has not been entered. Indeed, a stay of damages discovery is appropriate in patent cases to defer costly and possibly unnecessary discovery proceedings on the damages issues pending resolution of the liability issues.[32] While Best Buy is not seeking bifurcation, the principle and benefits of bifurcating discovery into different phases applies here.

Digitech will not be prejudiced because it can obtain discovery of technical information directly from the DCMs. Further, Digitech will be able to obtain damages related discovery from all parties, including Best Buy, towards the end of discovery. To stay discovery against Best Buy will further enhance judicial economy because it would streamline the Digitech cases and avoid costly discovery disputes and motions. Accordingly, if the Court is unwilling to enter a complete stay, the Court should stay discovery with respect to Best Buy until discovery related to invalidity and non-infringement in Digitech's cases against the DCMs is complete.

## V. CONCLUSION

For the foregoing reasons, the claims against Best Buy should be stayed pending resolution of the litigation against the DCMs.

If that relief cannot be had, Best Buy requests in the alternative that discovery with respect to Best Buy be stayed until discovery related to invalidity and non-infringement in Digitech's cases against DCMs is complete.

---

[31] *See e.g., Avia Group Int'l, Inc. v. Nike, Inc.*, 1991 U.S. Dist. LEXIS 20492, at *6 (D. Or. Sept. 17, 1991).

[32] *See e.g., Lemelson v. Apple Computer Inc. et al.*, 1993 U.S. Dist. LEXIS 20128, at *10 (D. Nev. June 4, 1993).

| | | |
|---|---|---|
| 1 | DATED: December 27, 2012 | Respectfully submitted, |
| 2 | | |
| 3 | | /s/    Michael A. Geibelson<br>Michael A. Geibelson<br>Wesley W. Lew |
| 4 | | **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.** |
| 5 | | Christopher K. Larus, *Pro Hac Vice Pending*<br>Bryan J. Mechell, *Pro Hac Vice Pending* |
| 6 | | **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**<br>800 LaSalle Avenue |
| 7 | | 2800 LaSalle Plaza<br>Minneapolis, MN 55402-2015 |
| 8 | | |
| 9 | | **Attorneys for Defendants**<br>***BEST BUY CO., INC., BEST BUY STORES, L.P., AND BESTBUY.COM, LLC*** |

83537745.2

-13-   BEST BUY'S MOTION TO STAY